UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KATHLEEN CAVANAUGH     *     CIVIL ACTION

VERSUS           *     NO. 22-3333

CHRISTINE E. WORMUTH, SECRETARY  *     DIVISION 2
DEPARTMENT OF THE ARMY, U.S.
ARMY CORPS OF ENGINEERS     *

**ORDER AND REASONS**

This matter was referred for all proceedings including entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties.  ECF No. 14.

Pending before me are Defendant Christine E. Wormuth, Secretary Department of the Army, U.S. Army Corps of Engineers' ("Army Corps") Motion to Dismiss or Alternatively for Summary Judgment and separate Motion for Summary Judgment, which were scheduled for submission on February 28, 2024.  ECF Nos. 29, 32, 34.  Plaintiff Kathleen Cavanaugh filed an Opposition to the Motion to Dismiss and alternative Summary Judgment on February 6, 2024 but failed to file any response to the second Motion for Summary Judgment.  ECF No. 31.  Defendant filed a Reply Memorandum on February 9, 2024.  ECF No. 35.  No party requested oral argument, and the court agrees that oral argument is unnecessary.

Considering the record, the submissions and arguments of counsel, and the applicable law, Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART and Motion for Summary Judgment is GRANTED  for the reasons stated herein.

I.   **BACKGROUND**

Plaintiff Kathleen Cavanaugh began working for the U.S. Army Corps of Engineers as an Engineering Technician in 2008.  ECF No. 1 ¶ 4.  She filed suit alleging sex, religion, age, and

1

disability discrimination under Title VII.  *Id.* ¶¶ 1, 3, 10-13.  Plaintiff alleges that she filed a formal complaint of discrimination on May 15, 2019, received a decision that she had not established a hostile work environment, and filed an appeal on December 6, 2021.  *Id.* ¶ 1; *see also* ECF No. 31 at 2-4 (summarizing complaints of discrimination in her formal complaint, as amended).

Plaintiff alleges that her managers discriminated against her based on sex, religion, age, and/or physical disability in the following manner:

- Allowing younger male coworkers to attend levee inspections and earn overtime pay after Plaintiff's second level supervisor David Beck told her in 2008 that engineering technicians do not attend levee inspections, resulting in her missing years of overtime pay;
- Automatically signing off on male colleagues' deployment paperwork in contrast to her deployment paperwork that, since 2009, was not signed absent Emergency Operations Center "forcing" management to sign it;
- Denying her a career ladder promotion in 2012 after another technician told management that she was not qualified and had to complete certain requirements, which "no one else had to do";
- Forcing her into medical retirement and removing her from the donated leave program in 2028 [sic] (presumably 2018);
- Forcing Plaintiff to return from deployment early and causing her to lose deployment pay in 2010; and
- Causing her donated leave to be taken away after it was paid out in July or August 2019, causing her to be indebted to the Government.

ECF No. 1 ¶¶ 6-9, 12.  Plaintiff also alleges that she endured severe and pervasive sexual harassment, which her employer knew or should have known about but failed to take any action.  *Id.* ¶¶ 10-11, 13.

Defendant moves to dismiss the Complaint or alternative for summary judgment for failure to exhaust administrative remedies.  ECF No. 29, No., 29-1.  The Army Corps contends that federal law requires a plaintiff to contact an EEO counselor within 45 days of any alleged discriminatory act or personnel action, and Plaintiff did not contact an EEO counselor until April 18, 2019, rendering any alleged discriminatory act occurring before March 4, 2019 as time barred.  ECF No. 29-1 at 1-2, 6-7.  Defendant asserts that Plaintiff's formal complaint of discrimination filed on

May 21, 2019, and on October 9 and 17, 2019, resulted in an extensive investigation and comprehensive report dated February 12, 2020. *Id*. at 2-3. Plaintiff failed to either request a hearing before an EEOC administrative judge or request a final agency decision ("FAD"), resulting in the Army issuing a FAD on December 16, 2021 concluding that Plaintiff's claims were untimely raised and were discrete acts rather than part of a continuing violation. *Id*. at 3-4. Defendant contends that all of the allegations in this lawsuit except the July or August 2019 donated leave issue were part of the FAD. *Id*. at 4. Defendant further contends that the continuing violation doctrine does not apply to any of Plaintiff's untimely claims because same applies to hostile environment claims, not substantive discrimination or retaliation claims, and even if it did, the claims are not related or continuing. *Id*. at 7-8.

Plaintiff filed an untimely Opposition Memorandum in which she argues that Defendant is not seeking to dismiss her entire complaint as it concedes the viability of the claim set forth in ¶ 9 of the Complaint. ECF No. 31 at 6-7. With regard to her remaining allegations, Plaintiff argues that the continuing violation doctrine applies because her claims of hostile work environment all occurred during her employment, perpetrated by the same managers, and at least one act occurred within the limitation period. *Id*. at 9-10. She further argues that summary judgment is improper because Defendant has failed to establish the absence of a genuine issue of material fact, has offered no argument or evidence, and conversion of the motion to dismiss to a summary judgment is improper without notice. *Id*. at 10-11.

In Reply, Defendant argues that the continuing violation doctrine does not apply to a collection of unrelated discrete acts. ECF No. 35 at 3-4. Defendant further asserts that Plaintiff's Complaint setting forth a July or August 2019 date for the donated leave issue is incorrect and inconsistent with Plaintiff's Declarations under Penalty of Perjury submitted as part of her EEOC

claim.  *Id*. at 2-3.  Defendant argues that, in her sworn testimony, Plaintiff initially indicated she did not recall the precise date she was taken off the donated leave program but that she received a letter in the mail in January 2019, and she later confirmed that the events occurred in 2018, not 2019.  ECF No. 35 at 2-3 (citing ECF No. 35-1 at 2, 4).  Thus, Defendant argues, even if the continuing violation doctrine were viable, because the donated leave incident occurred in 2018, not 2019, all of Plaintiff's claims are untimely and should be dismissed.  ECF No. 35 at 3.

Presumably in response to Plaintiff's Opposition Memorandum, Defendant also filed a separate Motion for Summary Judgment directed to the substance of Plaintiff's  claims rather than the timeliness of same.  ECF No. 32.  Defendant recounts the FAD evaluation of Plaintiff's claims, including those asserted herein, with citations to the Record of Investigation:

- The alleged actions "were not sufficient to show a hostile work environment;"

- That Cavanaugh failed to show that her age, sex, religion, or disability were factors leading to management's actions and that "[h]er claims are ultimately based, not on evidence, but on presumption and speculation;"

- The Corps articulated legitimate, non-discriminatory reasons for its actions."

. . .

- Levee inspections - Cavanaugh's named comparator was not "similarly situated" and the Corps had legitimate, non-discriminatory business reasons for not allowing Cavanaugh to participate in levee inspections;

- Delay in signing deployment paperwork - no delays and Cavanaugh did not suffer any harm to a term, condition, or privilege of her employment;

- Delayed promotion - the Corps had legitimate, non-discriminatory business reasons for delaying Cavanaugh's promotion to GS-11 due to lengthy deployments during her internship program;

- Medical retirement and leave program - the Corps did not try to force Cavanaugh into medical retirement and that there was no discriminatory motive when she was removed from the voluntary leave program;

- Early return from a deployment in 2010 - there were business reasons for her returning early and there was no evidence of discriminatory motive;

- Removal from voluntary leave program – HR specialist mistakenly removed Plaintiff, and that the Corps offered to reimburse her .

*Id*. at 3-4 (footnotes omitted) (citing ECF No. 32-2 at 1-2, 6-22, 24-28).

In this summary judgment motion, Defendant argues that Plaintiff cannot establish all of the elements for a prima facie case of discrimination, particularly that she was treated less favorably that any similarly situated employee.  ECF No. 32-1 at 1, 7-12.  With regard to Plaintiff's proposed comparator William Landry, Defendant argues that she is not similarly situated to Landry because he had more levee design experience, handled more complicated technical work, independently managed and completed his own levee design projects, and had 13 more years of experience.  ECF No. 32-8 ¶¶ 7-10; No. 32-3 ¶ 1; No. 32-4 at 4-5, 12-13 (sworn statements of direct supervisor Lauren Hatten); ECF No. 32-5 at 5-6 (sworn statements of second level supervisor David Beck).  Even if Landry were a proper comparator, Defendant argues, Plaintiff's claim still fails because, while he participated in levee inspections once or twice a year from 2008-2021, he did not receive overtime pay for same.  ECF No. 32-8 ¶¶ 7-8; ECF No. 32-3 ¶ 4.  Moreover, the Army Corps argues it has identified legitimate, non-discriminatory reasons for its employment decisions and Plaintiff has no evidence of pretext.  ECF No. 32-1 at 1, 12-16.  Finally, it argues that Plaintiff cannot establish the existence of a hostile work environment because she does not allege any severe or pervasive harassment based on any protected characteristic.  *Id.* at 17-20.

As of this date, despite the deadline having expired on February 20, 2024, Plaintiff has not responded to this filing, nor has she submitted evidence to contest any of Defendant's factual

assertions.  Likewise, Plaintiff has not filed a Rule 56(d) motion or otherwise indicate any need for additional time to respond to the motion for summary judgment.

## II.   APPLICABLE LAW

### A.  Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."  "A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit."[1]  Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[2]

The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (*i.e.,* the factual allegations must "be enough to raise a right to relief above the speculative level").[3]  It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[4]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[5]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"— "that the pleader is entitled to relief."[6]

---

[1] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

[2] *Id.*

[3] *Twombly*, 550 U.S. at 555 (citation omitted).

[4] *Id.* at 557–58; *Iqbal,* 556 U.S. at 678.

[5] *Iqbal,* 556 U.S. at 678 (citation omitted).

[6] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)) (internal citation omitted); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).

The complaint need not contain detailed factual allegations, but it must offer more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[7] The complaint must include enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[8] Although all well-pleaded facts are accepted as true and the complaint is considered in the light most favorable to the plaintiff, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[9]

Generally, when matters outside the pleadings are presented and not excluded by the court, the Rule 12 motion must be treated as one for summary judgment under Rule 56.[10] Consideration of documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice in the Rule 12 analysis on a Rule 12 motion does not convert the motion into a Rule 56 motion.[11] Indeed, the court may consider any documents attached to either the motion to dismiss or an opposition to that motion when the documents are referenced in the pleadings and are central to a plaintiff's claims.[12] "A

---

[7] *Iqbal*, 556 U.S. at 678 (citation omitted).

[8] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 545).

[9] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Twombly*, 550 U.S. at 555 (The "obligation to provide the grounds of [] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and internal quotation marks omitted).

[10] *Hodge v. Engleman*, 90 F.4th 840, 843–44 (5th Cir. 2024) (citing FED. R. CIV. P. 12(d)). The Fifth Circuit will find an implicit conversion when the court considers matters outside of the pleadings even when the parties are not "explicitly informed" that it is converting the motion into a summary judgment motion. *Id.* (citing *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016) (quotation marks and citation omitted)). Converting the motion to summary judgment in the absence of notice to the parties is reversible only if the party had no notice or opportunity to refute the allegations in the motion to dismiss. *Id.* (citing *Bolen v. Dengel*, 340 F.3d 300, 312-13 (5th Cir. 2003) (citation omitted)).

[11] *See, e.g., Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation and internal quotation omitted) (stating a court may consider Complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

[12] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp*., 748 F.3d 631, 635 (5th Cir. 2014) (citations omitted); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir.2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit

document is central to a claim if its attachment 'merely assists the plaintiff in establishing the basis of the suit.'"[13]   When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[14]

### B.  Summary Judgment Standard

Rule 56 mandates that summary judgment be issued "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[15]   When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.  If, however, the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[16]   Summary judgment is thus proper if the party opposing the motion fails to establish an essential element of her case.[17]

---

their consideration on a motion to dismiss"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 815 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019).

[13] *Port Cargo Servs., LLC v. Westchester Surplus Lines Ins. Co.*, 22-1018, 2023 WL 3211868, at *3 (E.D. La. May 2, 2023) (citing *Collins*, 224 F.3d at 499).

[14] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (stating that if an allegation is contradicted by contents of an exhibit, the exhibit and not the allegation controls) (citing *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)); *Thermo Credit, LLC v. Cordia Corp.*, No. 12-1454, 2013 WL 425930, at *6 (E.D. La. Feb. 4, 2013) (considering documents referenced or attached to complaint and noting that a document that contradicts the pleading takes prominence) (citing *Assoc. Builders, Inc. v. Ala.  Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

[15] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

[16] *Celotex*, 477 U.S. at 322–25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

[17] *See Celotex*, 477 U.S. at 322–23.

Summary judgment is not precluded by disputes over facts that are not "material"[18] and disputes that are not "genuine."[19] "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[20] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[21] Likewise, when a party's version of events is "blatantly contradicted by the record," it is not entitled to the benefit of any favorable light.[22] Thus, the court must resolve factual controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[23]

Only evidence—not argument, not facts in the complaint—will satisfy that burden.[24] Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[25] Summary judgment affidavits must be based on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated therein.[26] Summary judgment affidavits need not, however, use any magic language, provided the affiant's personal knowledge and competence are reasonably inferred from their positions and the

---

[18] A fact is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (citation omitted).

[19] A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson.*, 477 U.S. at 248; *see also Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (citation omitted).

[20] *Delta & Pine Land Co. v. Nationwide Agribus. Ins*., 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[21] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.

[22] *Scott v. Harris*, 550 U.S. 372, 376, 380 (2007) (stating plaintiff's selective description of car chase as "controlled" was contradicted by dashcam footage of the high-speed chase).

[23] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

[24] *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991).

[25] *Larry v. White,* 929 F.2d 206, 211 n.12 (5th Cir. 1991).

[26] FED. R. CIV. P. 56(c)(4).

nature of their participation in the matters to which they swore.[27]  Statements made by affiants without personal knowledge are not capable of being presented in admissible form at trial.[28] Further, generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[29]  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[30]  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate.[31]

In response to a properly supported summary judgment motion, the non-movant "must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[32]  In the absence of proof, the Court will not assume the nonmovant could or would prove the necessary facts, and the mere argued existence of a fact dispute will not defeat a properly supported motion.[33]

---

[27] *Matter of Green*, 968 F.3d 516, 523–24 (5th Cir. 2020) (noting personal knowledge may be inferred based on affiant's "sphere of responsibility"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529–30 (5th Cir. 2005) (inferring personal knowledge based on finding that testimony fell within affiant's "sphere of responsibility") (citations omitted).
[28] *D'Onofrio v. Vacation Publ'ns, Inc*., 888 F.3d 197, 208 (5th Cir. 2018) (citations omitted); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 366 (5th Cir. 2015) (holding affidavit based on witness' belief rather than personal knowledge is insufficient summary judgment evidence) (citations omitted); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 & n.15 (5th Cir. 2014) (stating summary judgment affidavit must provide sufficient information to allow the court to conclude that the affiant's assertions are indeed based on personal knowledge, not simply assert that the conclusions are based on personal knowledge) (citing cases); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (citation omitted) (stating conclusory assertions in affidavit may not be relied upon on summary judgment).
[29] *Bickerstaff v. Whitney Nat'l Bank*, No. 96-30231, 1996 WL 595654, at *3 (5th Cir. 1996) (citation omitted); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co*., 58 F.3d 144, 152–53 (5th Cir. 1995) (holding plaintiff's subjective beliefs are not sufficient to create an issue of fact).
[30] *See Bickerstaff*, 99 F.3d at *2–3 (holding that the evidence "falls within the gambit of subjective speculation and could not prevent summary judgment"); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for non-moving party.").
[31] *Anderson*, 477 U.S. at 249–50 (citations omitted).
[32] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[33] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little*, 37 F.3d at 1075); *Simmons v. Berglin*, 401 F. App'x 903, 905, 908 (5th Cir. 2010) (citing *Anderson*, 477 U.S. at 248); *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005) (citations omitted).

C. **Administrative Exhaustion and Time Limitations**

A federal civil servant alleging discrimination must first exhaust administrative remedies before filing suit in federal court.[34]  The federal employee must consult with an EEO counselor within 45 days of the alleged discriminatory act or, in the case of personnel action, "within 45 days of the effective date of the action."[35]

In the context of disparate treatment claims, each discrete adverse employment action constitutes a separate actionable unlawful employment practice, and each act starts a new clock for filing charges alleging that act.[36]  Thus, the limitations period runs from each alleged discriminatory act.  Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[37]  In contrast, hostile work environment claims are subject to the continuing violation doctrine under which, "[a]s long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.'"[38]

A continuing violation involves a persistent and continuing system of discriminatory practice that produces effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time.[39]  The claim is "continuing" because it involves

---

[34] *Green v. Brennan*, 578 U.S. 547, 552-53 (2016) (citing 42 U.S.C. § 2000e-16c).

[35] *Id*. at 553 (quoting 29 CFR § 1614.105(a)(1) and noting that this regulation is the federal employee analog to 42 U.S.C. § 2000e–5(e)(1), which applies to private-sector Title VII plaintiffs, who are required to file a charge with the EEOC within 180 or 300 days "after the alleged unlawful employment practice occurred.").

[36] *Smith v. AT&T Mobility Servs., LLC*, No. 21-20366, 2022 WL 1551838, at *2 (5th Cir. May 17, 2022) (quoting *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114, 102 (2002)).

[37] *Morgan*, 536 U.S. at 113.

[38] *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), *revised* (Mar. 13, 2017), *aff'd sub nom. Heath v. Elaasar*, 736 F. App'x 351 (5th Cir. 2019) (quoting *Morgan*, 536 U.S. at 117).  The "separate acts" must be related for the "single violation" to encompass the earlier acts.  *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328-29 (5th Cir. 2009) (finding that timely 2006 acts were sufficiently related to 2003-04 acts to constitute a single practice where "the pre–and post-limitations period incidents involved the same type of harassment and were perpetrated by the same manager").

[39] *Merriman v. Potter*, 251 F. App'x 960, 965 (5th Cir. 2007) (citations omitted) (cleaned up).

repeated conduct; the unlawful employment practice cannot be said to occur on a particular day.[40] In other words, the plaintiff was not aware of the discriminatory act at the time but rather, the discriminatory employment practice only manifested itself over time.[41]  To apply the continuing violation doctrine, a plaintiff must demonstrate that the separate acts are related.[42]  "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."[43]

### D.  Plaintiff's Discrimination Claims

Plaintiff is a federal employee alleging workplace discrimination based on sex, religion, age, and disability.  ECF No. 1 ¶ 1.  Although her Complaint asserts violation of Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment by the federal government on the basis of race, color, religion, sex, or national origin,[44] the substance of her allegations also implicate the Age Discrimination in Employment Act (ADEA) and Rehabilitation Act.  Although unclear, Plaintiff's allegations appear to assert claims for discrimination on the basis of her gender, religion, age and disability as well as hostile work environment claims on those same bases.

#### 1.  Disparate Treatment Claims

Title VII prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of various protected characteristics, including sex and religion.[45]  The Rehabilitation Act of 1973 constitutes the

---

[40] *Heath*, 850 F.3d at 737 (citing *Morgan*, 536 U.S. at 115-117).

[41] *See Abrams v. Am. Airlines Inc.*, 302 F. App'x 242, 244 (5th Cir. 2008) (citations omitted) (rejecting continuous violation argument where plaintiff was aware of facts supporting claim when the events occurred).

[42] *Williams v. E.I. du Pont de Nemours & Co.*, 154 F. Supp. 3d 407, 417 (M.D. La. 2015) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir.2006) (quoting *Stewart*,  586 F.3d at 328 (quoting *Morgan*, 536 U.S. at 105, 122 )).

[43] *Delaware State Coll. v. Ricks*, 449 U.S. 250, 257 (1980) (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)), *superseded by statute on other grounds as stated in Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011).

[44] 42 U.S.C. § 2000e-16(a).

[45] 42 U.S.C. § 2000e-2(a)(1).

exclusive remedy for a federal employee alleging disability-based discrimination.[46]  It provides that "no otherwise qualified individual with a disability in the United States shall. . . solely by reason of her or his disability. . . be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."[47]

The Age Discrimination in Employment Act (ADEA) prohibits employment discrimination on the basis of age in the private and local sectors and in federal employment.[48] Under the ADEA's federal sector provision, "all personnel decisions affecting employees or applicants for employment [with various federal agencies] who are at least 40 years of age . . . shall be made free from any discrimination based on age."[49]  This provision "demands that personnel actions be untainted by any consideration of age."[50]

### 2.  Hostile Environment Claims

Claims of hostile environment based on sex,[51] age,[52] religion,[53] and disability[54] are all

---

[46] *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (citation omitted); *Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 330 (5th Cir. 2021) (citing *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 380 n.6 (5th Cir. 2007)) (noting that the ADA is applicable to federal employees through the Rehabilitation Act).

[47] 29 U.S.C. § 794(a).

[48] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citing  29 U.S.C. §§ 623(a);  633a).

[49] 29 U.S.C. § 633a(a); *see also Allen v. United States Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023).

[50] *Babb v. Wilkie*, 589 U.S. ----, 140 S. Ct 1168, 1171 (2020).

[51]  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) (harassment based on sex).  The Supreme Court has recognized two forms of sexual harassment:  quid pro quo claims (i.e., requests for sexual favors that result in adverse employment actions) and hostile work environment (i.e., attentions or remarks that create a hostile work environment). *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998).  Whether a claim constitutes quid pro quo or hostile environment sexual depends on whether the plaintiff suffered a "tangible employment action," and each entails a distinct analysis.  *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) (citing *Ellerth*, 524 U.S. at 761–62). Tangible employment actions "require[ ] an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761–62.  If a plaintiff has suffered a tangible employment action, her suit is classified as a quid pro quo case, but if she has not suffered a tangible employment action, her suit is classified as a hostile environment case.  *Casiano,* 213 F.3d at 283  Plaintiff has not alleged any tangible employment action as a result of any alleged harassment. Instead, she vaguely pleads "severe and pervasive" and "intense" sexual harassment"; thus, she asserts hostile work environment claims.

[52] *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (recognizing claim of harassment based on age).

[53] *Id.* (recognizing claim of harassment based on religion).

[54] *Flowers v. South Reg'l Physician Servs. Inc.*, 247 F.3d 229, 232 (5th Cir. 2001) (recognizing claim of harassment based on disability).

recognized forms of discrimination.[55]  "A hostile work environment claim is composed of a series

of separate acts that collectively constitute one 'unlawful employment practice.'"[56]  To establish a

prima facie case of harassment based on a protected basis, the plaintiff must show: (1) she belongs

to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based

on the protected characteristic; (4) the harassment affected a "term, condition, or privilege" of

employment; and (5) the employer knew or should have known of the harassment and failed to

take prompt remedial action.[57]

For harassment to affect a term, condition, or privilege of employment, it "must be

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment."[58]  In other words, the workplace must be permeated with

discriminatory intimidation, ridicule, and insult such that it alters the conditions of the victim's

employment and creates an abusive work environment.[59]  Further, the harassment environment

must be both objectively and subjectively offensive (i.e., one that a reasonable person would find

hostile or abusive and one that the victim in fact did perceive to be so).[60]

The court considers the totality of the circumstances to determine whether an environment

is objectively hostile.[61]  Although no single factor is determinative, pertinent considerations are:

---

[55] *See also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020) (noting that sexual harassment is conceptually distinct from sex discrimination but also falls within Title VII's sweep) (citing *Oncale,* 523 U.S. at 79–80); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (recognizing hostile work environment claims for all bases protected by Title VII); *Patterson v. McLean Credit Union*, 491 U.S. 164, 180 (1989) (interpreting Title VII to provide a cause of action for severe or pervasive harassment that alters the conditions of employment and creates an abusive working environment) (quoting *Meritor*, 477 U.S. at 67).

[56] *Id.* (quoting *Morgan*, 536 U.S. at 106 (quoting 42 U.S.C. § 2000e-5(e)(1))).

[57] *Woods v. Delta Beverage Group, Inc*., 274 F.3d 295, 298 (5th Cir. 2001) (citing *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.,* 168 F.3d 871, 873 (5th Cir. 1999)); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Dediol*, 655 F.3d at 443 (citing *Harvill v. Westward Comms., LLC*, 433 F.3d 428, 4345 (5th Cir.2005)); *West v. City of Hous.*, 960 F.3d 736, 741–42 (5th Cir. 2020) (quoting *Ramsey*, 286 F.3d at 268).

[58] *West*, 960 F.3d at 741–42 (citation omitted).

[59] *Harris*, 510 U.S. at 21.

[60] *Faragher*, 524 U.S. at 787 (citing *Harris*, 510 U.S. at 21–22)); *Aryain v. Wal–Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Faragher*, 524 U.S. at 786).

[61] *Harris*, 510 U.S. at 23.

(1) "the frequency of the discriminatory conduct"; (2) "its severity"; (3) "whether it is physically threatening or humiliating, or a mere offensive utterance"; and (4) "whether it unreasonably interferes with an employee's work performance."[62]   Federal discrimination laws, however, are not a general civility code prohibiting all types of harassment in the workplace.[63]   "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[64]   Likewise, a hostile work environment claim does not protect employees from difficult or demanding managers,[65] harsh language by a supervisor,[66] denial of request for special duty or temporary change to schedule and duty assignments,[67] increased scrutiny,[68] or other routine employment matters that, while upsetting, are not offensive or harassing as in the way necessary to support a hostile environment claim.[69]

---

[62] *Id.; EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citation omitted).

[63] *Oncale*, 523 U.S. at 80–81.

[64] *Faragher*, 524 U.S. at 788 (internal quotation marks and citation omitted).

[65] *Brown v. Liberty Mut. Grp., Inc.,* 616 F. App'x 654, 657 (5th Cir. 2015) (citation omitted) (job-related criticisms insufficient); *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 564 (5th Cir. 1998) ("a few harsh words" or cold-shouldering is not an actionable offense); *McCray v. DPC Indus., Inc.,* 942 F. Supp. 288, 293 (E.D. Tex. 1996) (citation omitted) (holding that prima facie case of hostile work environment based on race requires plaintiff to show more than he was treated badly and that he was black); *see also Combs–Burge v. Rumsfeld,* 170 F. App'x 856, 862 (4th Cir. 2006) (noting that counseling about performance deficiencies and assigning her remedial tasks is not objectively abusive); *Martinelli v. Penn Millers Ins. Co.,* 269 F. App'x 226, 230 (3d Cir. 2008) (finding that scrutiny of an employee's work, "while unpleasant and annoying," is insufficient); *Harrington v. Disney Reg'l Ent., Inc.,* 276 F. App'x 863, 876 (11th Cir. 2007) (finding no hostile environment when an employer allegedly subjected the employee to unfair discipline); *Harbuck v. Teets,* 152 F. App'x 846, 848 (11th Cir. 2005) (finding no hostile work environment when the employer allegedly subjected the employee to heightened scrutiny).

[66] *Rowe v. Jewell,* 88 F. Supp. 3d 647, 675 (E.D. La. 2015) (citing *Bryan v. Chertoff,* 217 F. App'x. 289, 294 (5th Cir. 2007).

[67] *Id.* (citing *Hiner v. McHugh,* 546 F .App'x. 401, 408 (5th Cir. 2013); *Escalante v. Holder,* No. 09-368, 2011 WL 1528472, at *8 (W.D. Tex. Apr. 20, 2011) (citing *Ellis v. Principi,* 246 F. App'x 867, 871–72 (5th Cir. 2007); *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563–64 (5th Cir.1998))).

[68] *Id.* (citing *Ellis,* 246 F. App'x at 871); *Gonzales v. Wells Fargo Bank, Nat'l Ass'n,* 733 F. App'x 795, 798 (5th Cir. 2018) (careful monitoring of job performance or increased scrutiny does not rise to the level of hostile work environment) (citing *Ellis v. Principi,* 246 F. App'x 867, 871 (5th Cir. 2007) (per curiam)); *Ibrahim v. Haaland,* No. 19-0101, 2022 WL 3573217, at *19 (E.D. La. Feb. 3, 2022) (holding that scrutiny of an employee's work, while an annoyance, does not create a hostile environment) (citations omitted); *aff'd sub nom. Ibrahim v. Dep't of Interior,* No. 22-30537, 2023 WL 3409044 (5th Cir. May 12, 2023), *cert. denied sub nom. Ibrahim v. Dep't of the Interior,* 144 S. Ct. 331, 217 L. Ed. 2d 172 (2023).

[69] *See, e.g., McCloud v. McDonough,* No. 22-10357, 2023 WL 2525656, at *3 (5th Cir. Mar. 15, 2023) (holding that workplace disputes over work opportunities and discipline untethered from any evidence that such disputes stemmed

### E.  **The Prima Facie Case**

The issue in a discrimination claim is not whether the employer treated the plaintiff fairly or even whether its decision was correct or reached in error; the only issue is whether its decision was motivated by unlawful animus because illegal discrimination is different from simple unfair treatment:  "[I]t has long been the law in this circuit that Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."[70] "Management does not have to make proper decisions, only non-discriminatory ones,"[71] and Title VII is not a vehicle for judicial second-guessing of business decisions[72] because courts do not try the validity of an employer's good faith belief as to an employee's competence.[73]

Proof and finding of discriminatory motive is required.[74]   A plaintiff may prove discriminatory motive through either direct or circumstantial evidence.[75]

### 1.  **Direct Evidence**

Direct evidence is a "statement or written document showing [the employer's]

---

from one a protected characteristic fails to establish a hostile environment claim); *Montgomery-Smith v. George*, 810 F. App'x 252, 259 (5th Cir. 2020) (finding no hostile environment claim based on failure to promote and allegations of laughing and glaring, moving offices, not being invited to luncheon, isolation from co-workers and instructing others not to talk with plaintiff).

[70] *Nieto v. L&H Packing Co.*, 108 F.3d 621, (5th Cir. 1997) (citing *Turner v. Tex. Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Burdine v. Tex. Dept. of Cmty. Affs.,* 647 F.2d 513 (5th Cir. 1981)).

[71] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).

[72] *Bell v. Bank of Am.*, 171 F. App'x 442, 445 (5th Cir. 2006) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)); *see also Armendariz*, 58 F.3d at 151 n.7 (holding that establishing the employer's reason as misguided is insufficient; rather "the employee at all times has the burden of proving . . . that those reasons were a pretext for unlawful discrimination").

[73] *Deines v. Tex. Dept. of Prot. & Reg. Servs.*, 164 F.3d 277, 278, 281 (5th Cir. 1999) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)) (holding that the issue is not whether an employer's decision was the correct one, or the fair one, or the best one, but rather, whether it was motivated by discrimination); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

[74] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation omitted).

[75] *Id*. (citing *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994)).

discriminatory motive on its face."[76]  The evidence must be direct and unambiguous, allowing one to conclude without any inferences or presumptions that an impermissible factor motivated the decision.[77]  To determine whether comments in the workplace constitute direct evidence of discrimination, courts look to "whether the comments are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision."[78]  The court's "ultimate focus" in applying the direct-evidence test "is on whether the comments prove without inference or presumption that [the protected characteristic] was a basis in employment decisions' at [the plaintiff's workplace]."[79]

Plaintiff does not contend that anyone at the Army Corps used unambiguous epithets toward her.  Rather, her discrimination claims is premised on allegations that she was treated less favorably than a younger, male employee.

## 2.  Indirect Evidence

When a plaintiff relies on circumstantial evidence on a discrimination claim, the court generally analyzes the claim under the *McDonnell Douglas* framework,[80] which allows a plaintiff to create a presumption of discrimination by establishing a prima facie case of discrimination.[81]

---

[76] *Portis*, 34 F.3d at 329; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.") (citation omitted).

[77] *Moss v. BMC Software, Inc.* 610 F.3d 917, 929 (5th Cir. 2010) (internal quotations omitted) (citing *EEOC v. Texas Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996) (internal citation omitted).

[78] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.,* 778 F.3d 473, 476 (5th Cir. 2015) (citation omitted); *accord Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001) (same).

[79] *Herster v. Bd. of Sup. of La. State Univ.*, 887 F.3d 177, 187 (5th Cir. 2018) (quotation and citation omitted).

[80] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03(1973); *see also Saketkoo v. Admins. of Tulane Educ. Fund,* 31 F.4th 990, 997 (5th Cir. 2022) (applying *McDonnell Douglas* to discrimination claims based on sex); *Houston v. Texas Dep't of Agriculture*, 17 F.4th 576, 585 (5th Cir. 2021) ("Rehabilitation Act claims are also analyzed under the *McDonnell Douglas* burden-shifting framework.") (citation omitted)); *Milton v. Nicholson*, 256 F. App'x 655, 657 (5th Cir. 2007) ("The standards used to determine whether [the Rehabilitation Act] has been violated … shall be the standards applied under … the Americans with Disabilities Act… In a case brought under the [ADA], the court applies the burden-shifting analysis from *McDonnell Douglas*….") (cleaned up).

[81] *Cicalese*, 924 F.3d at 766 (citing *Laxton*, 333 F.3d at 578).

Plaintiff must show that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered some adverse employment action by the employer; and (4) was treated less favorably than other similarly situated employees outside the protected group because of her protected trait.[82]  In its *en banc Hamilton* decision, the Fifth Circuit rejected its earlier "ultimate employment decision" test for an "adverse employment action" in favor of a less strict standard.[83]  Now, "a Title VII plaintiff may recover damages even for 'discrimination in the terms, conditions, or privileges of employment' that 'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'"[84]  Although the criteria for an adverse employment action are broad, Title VII "does not permit liability for de minimis workplace trifles."[85]  Further, a plaintiff must allege facts—either direct or circumstantial—that would suggest that defendant's actions were based on his protected status or that defendant treated similarly situated employees outside of his protected class more favorably.[86]

When a plaintiff proceeds on a discrimination claim based on indirect evidence, to satisfy the "similarly situated" prong, she must carry out a comparator analysis.[87]  The plaintiff must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical (not strictly identical) circumstances (i.e., a "comparator").[88]  To

---

[82] *See, e.g., Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (citing *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014))); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F. 4th 494 (5th Cir. 2023); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *see also Nguyen v. Univ. of Tex. Sch. of Law*, 542 F. App'x 320, 323 (5th Cir. 2013).
[83] *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023) (*en banc*).
[84] *Hamilton* at 501 (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254, (1994) (quoting 42 U.S.C. § 2000e-2(a)(1))).
[85] *Id.* at 505 (citations omitted).
[86] *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (citation omitted); *Stone v. La. Dep't of Revenue*, 590 F. App'x. 332, 339 (5th Cir. 2014).
[87] *Saketkoo*, 31 F.4th at 998 n.3 (citing *Alkhawaldeh v. Dow Chem. Co.,* 851 F.3d 422, 426 (5th Cir. 2017) ("The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" (quoting *Lee*, 574 F.3d at 259)).
[88] *Id.* (citations omitted); *see also Lee*, 574 F.3d at 260 n.25.

determine whether a comparator is similarly situated, courts consider various factors including job responsibility, experience, and qualifications."[89]

Courts have historically applied *McDonnell Douglas* to federal-sector ADEA claims as well as Title VII claims.[90]  However, in *Babb v. Wilkie*, the Supreme Court held that, to establish a violation of the ADEA, a federal employee asserting an age claim under § 633a(a) is not required to show that age was a but-for cause of the employment decision.[91]  Courts have questioned whether *Babb* forecloses application of the full *McDonnell Douglas* framework to federal-sector employees' ADEA claims.[92]  For instance, in a recent unreported case, the Fifth Circuit indicated that a federal-sector plaintiff establishes a triable ADEA claim if she shows a genuine dispute as to whether age played "any part" in the employment decision.[93]  This showing can be through direct evidence, circumstantial evidence, or both.[94]  If age served as a basis (although not the sole basis) for the decision, the burden shifts to the defendant to prove by a preponderance of the evidence that the same decision would have been made regardless of the discriminatory animus.[95]

## III.   ANALYSIS

### A.   Rule 12(b) Supports Dismissal of the Time-Barred Claims

Although Plaintiff did not attach documents to her Complaint, paragraph 1 states:

On May 15, 2019, Complainant filed a formal complaint of discrimination, alleging her age, sex, religion, and her disability were factors leading to management's

---

[89] *Herster*, 887 at 185.

[90] *Allen*, 63 F.4th at 301.

[91] *Babb v. Wilkie,* —— U.S. ——, 140 S. Ct. 1168, 1177 (2020).  But-for causation, however, is important in determining the appropriate remedy because a federal employee may only obtain all forms of relief available under § 633a(a) is they establish that age discrimination was a but-for cause of the employment action.  *Id*. at 1177-78.  Thus, if age was a but-for cause of differential treatment in an employment decision but not a but-for cause of the decision itself, the employee can still "seek injunctive or other forward-looking relief." *Id*. at 1178.

[92] *See Allen*, 63 F.4th at 300 (5th Cir. 2023) (noting that at least one appellate court has interpreted *Babb* as foreclosing "the full McDonnell Douglas framework" to federal-sector employees' ADEA claims) (citing L*ewis v. Sec'y of U.S. Air Force,* No. 20-12463, 2022 WL 2377164, at *10 (11th Cir. June 30, 2022)).

[93] *Katz v. Wormuth*, No. 22-30756, 2023 WL 7001391, at *4 (5th Cir. Oct. 24, 2023) (citing *Babb*, 140 S. Ct. at 1174).

[94] *Id*. (citing *Jackson v. Cal-W. Packaging Corp.,* 602 F.3d 374, 377 (5th Cir. 2010)).

[95] *Id*. (cleaned up) (citing *Wallace v. Perform. Contractors, Inc*., 57 F.4th 209, 218 (5th Cir. 2023) (quoting *Jones v. Robinson Prop. Grp., L.P.,* 427 F.3d 987, 992 (5th Cir. 2005))).

actions. An investigation was conducted by the Department of Defense Investigations and Resolutions Directorate. The Army found that the environment created within the Complainants workplace was not sufficient to show a hostile work environment. On December 6, 2021, Complainant filed a notice of appeal.

Defendant's motion to dismiss includes four exhibits, with five documents:  (1) Plaintiff's May 21, 2019 Formal Complaint of Discrimination (ECF No. 29-2); (2) October 15, 2019 Acceptance/Partial Dismissal of Plaintiff's First Amendment to Formal Complaint; and November 22, 2019 Acceptance Letter of Plaintiff's Second Amendment to Formal Complaint (ECF No. 29-3); (3) Report of Investigation (ECF No. 29-4); and (4) December 15, 2021, Final Decision on Plaintiff's EEO Complaint by Department of the Army.  ECF No. 29-5.  Defendant's Reply attached Plaintiff's two Declarations under Penalty of Perjury submitted in connection with the investigation.  ECF No. 35-1.  This Court may properly consider, without converting the Rule 12 motion into a Rule 56 motion, the May 21, 2019 Formal Complaint of Discrimination, the Army's investigation of same, and the Army's resolution of the complaint (ECF Nos. 29-2, 29-4, 29-5) as these documents are referenced in and central to the Complaint.  The other documents attached to Defendant's motion, however, will not be considered.

Plaintiff's May 21, 2019 charge reflects that she made first contact regarding any alleged discrimination claims on April 18, 2019.  ECF No. 29-2, Box 12(c).  Accordingly, any claim based on discrete events occurring more than 45 days earlier (i.e., before March 4, 2019) are time barred under 29 C.F.R. § 1614.105(a)(1).  Indeed, in her response to the Rule 12 motion, Plaintiff does not dispute that the events raised in her Complaint except one (the July or August 2019 leave issue) are time barred.  Rather, she argues that the time-barred events remain viable because all events (including the July or August 2019 issue) all occurred during her employment and involved the same managers.  ECF No. 31 at 9-10.

Contrary to Plaintiff's arguments, the Complaint does not indicate sufficiently related events necessary to establish a continuing violation.  Rather, Plaintiff alleges that, over a more than 10-year period,  she had two separate managers (Lauren Hatten (her first level supervisor) and David Beck (her second level supervisor)), with Mr. Beck involved in one allegation (levee inspections, *id*. ¶ 6) and other co-workers and unnamed supervisors involved in the other matters. ECF No. 1 ¶¶ 5, 8, 9.  In *Morgan* the Court recognized a continuing violation when "pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." 122 S. Ct. at 2076.

Setting aside the issue regarding whether the allegations involve the same managers when some are attributed to co-workers and unnamed supervisors, the allegations neither involve the same type of employment action nor appear to have occurred relatively frequently.  For instance, Plaintiff was aware, at the time they occurred, that she was required to return early from deployment in 2010, denied a promotion in 2012, and forced into medical retirement and removed from the donated leave program in 2018.  These are all discrete, one-time events.  Thus, the discrete acts cited by Plaintiff are insufficiently related to constitute a continuing violation.  For that reason, her claims premised on discrete acts occurring before March 4, 2019 are time-barred.

Although Defendant argues that Plaintiff's last act (July or August 2019) is mistaken and really occurred in December 2018,[96] to rule on that basis would require consideration of the documents attached to Defendant's Reply and thus conversion of the motion to a summary judgment motion.  Given that Defendant filed a separate, second motion for summary judgment, the Court will proceed to address that motion.

---

[96] ECF No. 35 at 2-3.

B. **Summary Judgment is Proper**

Even if virtually all of Plaintiff's claims were not time-barred, all claims are subject to dismissal on summary judgment for several reasons. First, Plaintiff has failed to respond or come forth with any evidence in response to Defendant's properly supported summary judgment motion. In response to a properly supported motion for summary judgment, the nonmoving party must produce sufficient evidence to show the existence of a genuine issue of material fact.[97] Although summary judgment cannot be granted simply because there is no opposition,[98] a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law.[99] Defendant's uncontested facts establish that it is so entitled.

Defendant hired Cavanaugh under the Federal Career Intern Program, which was a two-year training and career progression program. During her first four years of employment, she applied for and was granted two long deployments to Afghanistan in 2009 and 2011. Her deployment work and her work as an Engineering Technician were different, and she did not gain the experience and skills needed to earn a promotion while deployed in 2009 and 2011. Further, Plaintiff's proposed comparator participated in levee inspections once or twice a year without overtime pay for same, had thirteen more years of experience than Cavanaugh, including more levee design experience, more complicated technical work, and more independently managed and completed levee design projects. Finally, Plaintiff's supervisors genuinely believed that she was planning to retire and moving to North Carolina in 2018, and after Cavanaugh was taken off the donated leave program, Defendant offered money to resolve the resultant debt. ECF No. 32-8 ¶¶ 11-12.

---

[97] *See* FED. R. CIV. P. 56(c), (e)(2), (e)(3); *Green v. Ross*, 398 F. App'x 2, 4 (5th Cir. 2010) (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)).
[98] *Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).
[99] *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014).

Based on these uncontested facts and with additional citation to record evidence, Defendant demonstrates that Plaintiff has no evidentiary basis to satisfy the third and fourth prongs of *McDonnell Douglas* for each of her asserted acts of discrimination:

- Levee Inspection – Supervisor David Beck believed that Plaintiff lacked the necessary experience and qualifications to conduct levee inspections in contrast to Landry who had training and experience to do so.  ECF No. 32-5 at 19-20.
- Delayed Paperwork – Supervisor David Beck's sworn testimony indicates he did not delay or refuse to sign any of Plaintiff's paperwork, and no one from EOC ever forced him to sign any deployment papers.  *Id*. at 20.  Further, Jean Vossen (65 year-old female Catholic), Chief of the Civil Branch, recalled Plaintiff contacting her on one occasion to sign deployment paperwork, which she did once she had the opportunity to read same.  ECF No. 32-7 at 2, 4.
- Delayed Career Ladder Promotion and Forced Early Return from Deployment – Plaintiff had two lengthy deployments during her 2-year internship/career progression. Because the work duties during deployment were different from those required of her position in the New Orleans District office, those deployments delayed her promotion to full GS-11 duties until she had worked in her current position for a sufficient period to gain the needed training and skills and necessitated her return to work to gain that relevant training and experience.  ECF No. 32-5 at 9-10.
- Removal from Donated Leave Program and Forced Return – Lorette Golbelt, an African American HR specialist for the Army, is the employee who requested that Plaintiff be removed from the Voluntary Leave Transfer Program in May 2018, admitted that she erroneously removed Plaintiff from the program in 2018.  ECF No. 32-6 at 1, 4.  After being advised by her own supervisor of the error in early 2019, she sought to correct the error and, when the error could not be corrected, offered compensation to resolve the resultant debt arising from the error.  *Id*. at 6-7.

ECF No. 32-1 at 7-12.

Although Plaintiff likely could establish that she is a member of a protected group and was qualified for her position,[100] given Defendant's uncontroverted evidence, there is no ***evidence*** that

---

[100] The qualification element is generally not an issue where the employer has already hired the employee and the issue does not involve failure to maintain licensure or certifications.  *See, e.g.*, *Taylor v. Peerless Indus. Inc*., 322 F. App'x 355, 357 n.1 (5th Cir. 2009) (citing *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350–51 (5th Cir. 2007) ("Although Washington Mutual submitted evidence that Berquist's supervisors were not pleased with his performance, this evidence does not prove a lack of qualifications at the prima facie stage."); *Bienkowski v. Am. Airlines, Inc*., 851 F.2d 1503, 1506 (5th Cir. 1988) ("[A] plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.")).  *But see Lewis v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 956 F. Supp. 2d 722, 734 (E.D. La. 2013), *aff'd*, 562 F. App'x 209 (5th Cir. 2014) (citing *Bienkowski*, 851 F.2d

Plaintiff was treated less favorably than similarly situated employees outside the protected group in nearly identical circumstances.  Nor has she produced evidence to establish that she experienced severe or pervasive harassment based on any protected characteristic.  Indeed, with regard to Plaintiff's one alleged claim in July or August 2019, which would not be time barred, the sworn testimony of the relevant HR specialist (not Plaintiff's work supervisor) admits that she made a mistake, and she sought to rectify the error when the mistake was brought to her attention.

Assuming Plaintiff had offered evidence to establish a prima facie case, Defendant has also set forth non-discriminatory reasons for its employment decisions.  When the employer proffers legitimate non-discriminatory reasons for its decision, the presumption of discrimination "simply drops out of the picture" and the burden returns to the plaintiff to prove that the defendant intentionally discriminated against her because of the protected characteristic.[101]  A plaintiff may carry that burden by establishing pretext, either through evidence of disparate treatment, by showing that the employer's proffered explanation is false or unworthy of credence,[102] i.e., that the employer's articulated reasons were not its true reasons, but are a pretext for discrimination,[103] or that a "motivating factor" was the plaintiff's protected characteristic."[104]

The anti-discrimination laws do not ask a court to sit as a super-personnel department that reexamines an entity's business decisions or the wisdom of those decisions, only to address whether those decisions are the result of discrimination.[105]  Thus the issue at the pretext stage is

---

at 1503) (holding that plaintiff was unqualified even after she was hired because she did not possess the necessary credentials for the position), *abrogated on other grounds as recognized by Owens v. Circassia Pharm., Inc.,* 33 F.4th 814, 829 n.15 (5th Cir. 2022).

[101] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citations omitted).

[102] *Harville*, 945 F.3d at 879 (citation omitted).

[103] *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015) (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir.2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000))).

[104] *Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 253–54 (5th Cir. 2020) (citing *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802)).

[105] *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (citations omitted); *Harris v. Double G. Coatings, Inc.*, No. 96-60485, 1997 WL 255619, at *2 n.4 (5th Cir. 1997).

not whether the employer's reason was correct or fair, but whether the decisionmaker honestly believed the stated reason."[106]  Plaintiff must create an issue regarding whether "the employer honestly believes in the reasons it offers, not whether [the employer] made a bad decision."[107]  The court should not weigh the wisdom of particular employment decisions nor question every management decision and work assignment.  The single issue is whether the employer's decision was motivated by discrimination.[108]

A plaintiff's prima facie case, "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[109]  It is not enough, however, to *dis*believe the employer; the plaintiff's explanation of intentional discrimination must be believed as the ultimate issue is whether the defendant intentionally discriminated against the plaintiff.[110]  Thus, the plaintiff is not relieved of her burden to present evidence that will permit a rational factfinder to infer intentional discrimination.[111]  Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the

---

(citing *Ruby v. Springfield R-12 Pub. Sch. Dist.*, 76 F.3d 909, 912 n.7 (8th Cir. 1996)).

[106] *Harville*, 945 F.3d at 877 & n.24  (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) ("The issue at the pretext stage is whether Appellee's reason, even if incorrect, was the real reason for Appellant's termination.")); *Goudeau, 793 F.3d at 476 (citation omitted).

[107] *Harris*, 1997 WL 255619 at *2 n.4; *7 (citations omitted).

[108] *See McVille v. Inter-Cmty. Healthcare, Inc.*, 460 F. App'x 353, 355 (5th Cir. 2012) (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Deines v. Tex. Dep't of Prot. & Reg. Servs.*, 164 F.3d 277, 281 (5th Cir. 1999)).

[109] *Reeves*, 530 U.S. at 148; *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 319 (5th Cir. 2020) (citation omitted); *see also St. Mary's Honor Ctr.*, 509 U.S. at 511.

[110] *St. Mary's Honor Ctr.*, 509 U.S. at 519.

[111] *Harville*, 945 F.3d at 877 & n.26 (citing *Reeves*, 530 U.S. at 153 (noting that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination" and reminding that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff") (internal quotation marks and alterations omitted)).

employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper.[112]

## IV.   <u>CONCLUSION</u>

Defendant has filed two motions:   (1) Motion to Dismiss or alternative Motion for Summary Judgment; and (2) Motion for Summary Judgment.   For the foregoing reasons, the Motion to Dismiss seeking dismissal of all claims based on discrete acts occurring before March 4, 2019 must be granted as such claims are untimely, leaving only the leave claim alleged to have occurred in July or August 2019.   The specified claims are not related such that a viable claim from July or August 2019 would keep the claims based on prior discrete acts alive.

In addition, however, Defendant has filed a separate Motion for Summary Judgment addressing *all* of Plaintiff's claims on the merits.   Summary judgment requires evidence, not simply allegations.   Defendant has presented substantial evidence, including sworn declarations of Plaintiff's supervisors, coworkers, and HR representatives, that undermine Plaintiff's allegations. In light of Plaintiff's failure to come forward with *any evidence* in response to Defendant's properly supported motion for summary judgment, it is clear that Defendant is entitled to summary judgment dismissal of all of Plaintiff's claims, including the alleged July or August 2019 event.

In short, Defendant has properly established, with admissible evidence, fact supporting its position, and Plaintiff has failed provide any evidence to create a material issue of fact as to whether she was discriminated against based on her race, age, gender or religion, or subjected to a hostile work environment based on same.   Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant's Motion to Dismiss (ECF No. 29) is GRANTED IN PART AND DENIED IN PART as stated herein.

---

[112] *Id*. at 876–77 (citations omitted).

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (ECF No.

32) is GRANTED.

New Orleans, Louisiana, this _____ 1st day of March, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE